Next case on this morning's docket is Lash Excavating & Concrete v. Darren Unterbrink. We have Mr. Runge for the appellant and Mr. Connor for the appellant. Let's see. I think I reversed for the appellant. You may proceed, Mr. Runge, when you are prepared. Please report, Mr. Connor. My name is Bob Runge. I represent the appellant, Darren Unterbrink. This case is a contract case. Basically, there was an agreement between Mr. Unterbrink, Bruce Unterbrink, and Mr. Lash for him to do work at his property, particularly at his barn. Mr. Lash gave Mr. Unterbrink a proposal. Mr. Unterbrink refused to sign the proposal. According to his testimony, he had a conversation with Mr. Lash. Mr. Lash said, I won't proceed without a written contract. Mr. Unterbrink said, I'm not signing any contract. He said, I'm not at all. Well, Monday came along and Mr. Lash appeared and went to work, based on, according to Mr. Unterbrink, dominant material. He did the work at the barn. Mr. Unterbrink supervised the work, directed the work, changed certain portions of the work that he had initially wanted to do. He was on the property every day, all day. When he finished that job, presumed to what I believe was an oral contract that Mr. Lash agreed to when he went to work, because his proposal was unsigned, Mr. Unterbrink told him to go down to his son's house and do some work at the driveway, because all the equipment was still on the job. So Mr. Lash goes down to Darren Unterbrink, who is his son, and does the work down there. Mr. Unterbrink has been keeping, according to the record, time every day of the labor and the machine, and has, and is in evidence, as our exhibit one, handwritten notes that he made simultaneously with the work. When he got finished, it came to about $4,430. And he wrote a check to Mr. Lash for $5,100. He said he did a good job, and he thought he was entitled to that, so he gave it to him. He just gave him an extra $700 as a tip. No, what he said to me was he did a good job. Okay, just out of the goodness of his heart. In other words, he felt he only owed him $4,300 or $4,400, but he went ahead and paid him the $5,100 that Lash said he owed. Right. Okay. And that was because he said Lash did a good job. Okay. So, but Lash's workers did a good job. Okay, and just There's no evidence in this record that Lash was ever on the job. And just to make sure I understand, Unterbrink's notes, he testified that those notes covered not only the work done at his house, but also at his son's house. That's correct, and separated out the machinery and the labor itself. And the labor rates were testified to both by Mr. Unterbrink and Mr. Lash. It's in the trial record. So that if you multiply them out, and if you understand that Mr. Unterbrink was there taking the time every day, his figures seem to be supported by the testimony. At any rate, when he finishes, he believes Mr. Unterbrink knows that he has paid for the work. And he tries, he gets a bill for the additional money, and he tries to call Mr. Lash. And Mr. Lash doesn't call him back, and that's the end of that. The next thing they get, both Bruce Unterbrink and Darren Unterbrink, are small claims for the amount of the work done at Darren's house. And so we look at it, and we say, well, initially, Mr. Lash gave him a proposal. Mr. Unterbrink rejected it, told him he wanted to do time and material. Mr. Lash then came to work, brought his people to work, and that was the contract. It was an oral contract. Mr. Runge, how do you explain the fact that he paid him exactly what the proposal had asked for? According to the testimony, it was because he thought that Lash's people did a good job. He changed the job after they got there, put in some reinforced concrete. And his testimony is he did it because he thought he did a good job. I guess the amount is kind of curious, apart from the fact that it was a generous tip, but it's the exact amount that was in the proposed agreement. That's correct. That's correct. But it doesn't – since the proposal was in time. Was there any oral agreement that Mr. Unterbrink was going to be the one to keep the time rather than the workers? The oral agreement was that the men would come and work for whatever the rate that was cited, which I think was $25 an hour for labor, $40 an hour for the machine. And if time and material is up, you have to keep the time. And the only time that's been kept, including the proposal given to Mr. Unterbrink by Mr. Lash and the work done at Brian's house, both of those, there's no itemization. It's just a flat sum. So when they assume, they assume both Bruce and the boy were the same amount of work, the work done at the boy's house. Well, we say that the work done there was an extension of the work that Bruce and the same terms and conditions. And so the workers go down and they do the work. Again, Bruce supervises the work, keeps the time. And when he gets the small claim, he looks at it and he says, my God, we've already paid for it. So the defense basically is we pay and the problems, there are a couple of problems. One is… Did the first proposal include work on Darren's property, the $5,100? No. No. No, it was just the barn. The problem is when the court decided the case, it says in the beginning, there's an old contract between the parties, but he's already dismissed out Bruce Unterbrink, the claim against Bruce Unterbrink, which means that he has decided that the payment of $5,100 by Bruce Unterbrink must have been for his barn. Now, that's before even the testimony is out. And he's further decided. The work done on Darren's property was, in essence, a continuation of what was essentially an oral agreement between them. And the oral agreement was, according to my claim, time and material. There's no ratification of the proposal. Then he says that there's no evidence from either party about who paid for the material. If you look at the transcript, page 27, lines 4 through 8, Mr. Unterbrink says he paid for everything. No dispute to that. I know there's page 21, lines 6 through 8, he said he paid for everything. At any rate, what's happened is the trial court's now got him out of the case, and he's the one who made the deal. So he's left with Darren. So when he looks at it, and he says, well, Mr. Unterbrink, the way he gets to Darren is he said Mr. Unterbrink was Darren's agent. But there is nothing in the record to support that. And the only connection that Darren had with the work at his house was when the work was done, he took the pizza from him. Didn't eat with him, he just took the pizza. What about quantum merit? I mean, you know, Darren was there, he saw these people were working on his house, he was getting the benefit of it. Nobody says Darren made any agreement with anybody. I know, but he stood there and watched and provided pizza as he accepted the benefit of the work done on his property. Well, his father said he paid for the benefit. Well, assuming the trial court was correct in determining that that was wrong, that his father hadn't paid, then wouldn't quantum merit be a justification for the verdict? If there's no agency relationship between the two, then might come to your house, put in some landscaping for you, and I'm going to pay you now because that's quantum merit? I don't think so. Okay, go ahead. Anyway, it's just that it's a weird case, and as I say, the proof really is in the pudding. When you sit down and look at the hours that he kept, how he explained them, when you look at what Mr. Lash says about the same work, the same machine and the charges for it, and then you know that Mr. Lash, there's no testimony anywhere that he was ever on the job. Mr. Conner ramrodded both the jobs, kept the time, and according to him, paid according to it, and burnt down a little bonus beside it. So, I think that the trial court, it's evaporated in the manifest way of the evidence, and on the agency thing, there is no agency. Thank you. Thank you, Mr. Runge. You'll have the opportunity to rebut. Mr. Conner, you may proceed. Good morning. May it please the court. Good morning. My name is Brian Conner. I represent Lash Excavating and Concrete, the FLE in this matter, plaintiff below. This appeal arises, as counsel said, from a small claim action that sounded in both contract and quantum merit with quasi-contract. Against two defendants, both Bruce Underbrink and Darren Underbrink. They were sued under various theories as separate defendants. The only recovery sought is for the value of the driveway and patio that were put in by Lash Excavating. That's $2,448. The trial court found that Darren Underbrink was responsible. The trial court entered summary judgment against Lash and in favor of Bruce Underbrink, finding that Bruce Underbrink was not responsible for the driveway and patio. In fact, he had concluded his contractual obligation with Mr. Lash when he paid $5,100, the precise amount of the bid faxed to Bruce Underbrink. That contract preceded in time and was concluded as a self-contained contract. $5,100 put in a barn floor. Mr. Lash put in a barn floor. Mr. Underbrink paid $5,100. That was the only instance of that contract. There was a separate contract with Bruce Underbrink or Darren Underbrink, depending upon what theory the court chooses to decide on that render. But under express contract theory, it would be Bruce Underbrink, and under quantum merit theory, it would be Darren Underbrink. The express contract theory could be extended to Darren Underbrink if you accept the proposition that Darren later ratified the Bruce-Lash contract. If, in fact, Bruce and Lash entered into a contract to build a patio with Darren's, and Lash, in fact, shows up and builds a patio with Darren's, Darren's aware the work is going on, he acquiesces after notice in the language of the cases, he has effectively ratified the contract, even if there was no agency authority to enter into such a contract in the first place. So whether or not there was any evidence of agency, I believe there was some evidence of agency, and we've briefed that, but even if the court says there was no evidence of agency, he had no authority to enter into the contract, it was certainly ratified. It was the basis of the agency to, if I say I want you to build a patio on Judge Chapman's property. There was evidence that Bruce and Darren Underbrink worked together, they're contractors themselves. There was evidence they had this conversation that everybody knew what was going on at Bruce's house. And so it may be a bit of a stretch, but there's certainly evidence in the record that could have supported the trial judge's decision when it's Monday morning and Bruce says to Darren, I'm going over there to tell him if he wants that contract signed, I'm not signing it. Darren was aware of what was going on, even at the moment of contract formation. And there's conflicting testimony as to that moment of formation of the Bruce-Lash contract. And that conflicting testimony is that they had a conversation about time and materials versus the bid proposal. Bruce says yes, that conversation happened, Lash says it didn't. And I think the most telling piece of evidence on the point is he later pays the $5,100. It just, it belies common sense that he would have that argument and everything would be going so strenuously, and then later he was shocked when he has to pay the $5,100. As to your question, can't he just go over there and put it in? No, but he had reason to. I believe there was some evidence of agency. I don't know that there was enough evidence of agency to satisfy a burden. But again, this is the first we've heard of agency on a deal. There's no agency argument below. And in fact, summary judgment was granted as to Bruce. The argument below, Darren didn't testify. There was no defense presented on behalf of Darren Underbrink. The only defense was presented on behalf of Bruce Underbrink. He won. The burden would have been on Darren to show at that time that there was no reason for him to pay. There's no evidence of agency elicited because the argument wasn't fully formulated. It's wrong. The express contract argument that there must be acquiescence after notice, in fact, to have ratification of that contract is pretty clear. I don't think there's any conflict in the record that there was notice. Everyone was present, and there was acquiescence. Lash wasn't chased off the job by law enforcement. There was no trespass action. There was nothing to indicate that there was not acquiescence. In fact, all the evidence pointed towards acquiescence. So Bruce pays Lash $5,100. Lash then completes the job at Darren Underbrink's house. They eat pizza, and everyone walks away happy except for Lash because he bills Darren for the $2,448 that he expects to be paid for the driveway and patio. It's a separate contract. If it's not an express contract, he's entitled to that valuing quasi-contract, recovering quantum merit. He must have provided the service that benefited the defendant, Darren Underbrink. Darren must have accepted that benefit, and it must not have been gratuitous. There was no evidence that there was not a service or a benefit conferred upon Darren Underbrink. There was no evidence that the defendant did not accept that benefit. No one can test there's a patio and a driveway there. And there's no evidence in the record that it was not intended to be gratuitous. In fact, Bruce, by his own testimony, says he continued to hang out and keep time. So everyone was expecting that Lash would be paid for that job. There's conflict in the record as to the document produced by Bruce Underbrink as to his time calculations. That document was never submitted to the court as an exhibit. While it was used in trial, it was never, in fact, moved into evidence. So the document remains—the document itself is not evidence. Bruce Underbrink's testimony is evidence. But the document itself, while it was never moved into evidence, remains not evidence of anything. Is it in the record? It is included in the record under appeal, the best explanation being it was included with all the other exhibits. But as the record indicates, it was never moved into evidence. And had it been moved into evidence, there would have been numerous objections based on the document's inherent unreliability and the problems that it would have faced. It's a hearsay document. It's a problematic document from the word go. And that's why it was never moved into evidence. And now to sort of backhand it and slide it into argument on appeal, I think, is inappropriate. I don't dispute that the testimony was evidence. But I think Bruce's fair testimony about the time that he kept, he was the customer on the job. It just seems unlikely that Lash would have—and there was no testimony on the point— that Lash would have allowed the customer to keep the time on the job. That just doesn't make much sense. And the trial judge saw it for what it was. The trial judge saw that one contract had begun, been concluded, and another contract had been started and then was concluded for the amount of $2,448. The hard fact remains, there is a value there that has never been paid for. The defense, I suppose, is that it was paid for all in that long sum of $5,100. But there was no contemplation of Darren's patio and driveway in the $5,100 bid. The only evidence presented in trial as to the value of this thing was Lash's bill for $2,448, which remains unpaid. Thank you. Thank you, Mr. Conner. Mr. Runge, do you have rebuttal? Just a couple of things. First, the fact that we collected $5,100 back wasn't paid for all the work. It wasn't paid and wasn't the next job. Secondly, the fact that the work on Darren's property was, in essence, a continuation of what was essentially an old contract between Bruce and Mr. Lash. And if that's what it is, then the testimony from Bruce Hunter is clear about how he kept the record, what he wrote down, how many hours there were, his compilations. It's all in his testimony in the record. Mr. Lash said he kept time, but when you look at his bill, there is no time. And he didn't submit any time for the work on either job. And the reason Mr. Hunterbrink kept the time is because he was supervising the work. He was there every day. And if you know anything about construction people, if he didn't pay those people on the hours, keep the hours for them, for what they worked, he'd hear about it. So, you know, it's a situation where, in my opinion, they sued them both, not for the money on the house. And I think Judge Missendorf, just as this thing went along, just got ahead of himself and he dismissed the claim against Bruce Hunterbrink when he was in fact the contractor. Thank you. Thank you, Mr. Runge. And thank you both, Mr. Conner, for your arguments. And we'll take the matter under advisement and under a ruling in due course. Thank you.